IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                                                PLAINTIFF

v.                    Civil No. 5:22-CV-05138-TLB-CDC

CHIEF DEPUTY JAY CANTRALL, Washington County Detention Center;
MAJOR RANDALL DENZER, Washington County Detention Center;
LIEUTENANT KEVIN EAST, Washington County Detention Center;
LIEUTENANT NOLAN AKE, Washington County Detention Center;
LIEUTENANT AMANDA ARNOLD, Washington County Detention Center       DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff John William Scharnhorst, III, a prisoner,[1] filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was denied access to literature, religious materials, and the daily newspaper while incarcerated at the Washington County Detention Center (WCDC) in violation of his constitutionally protected rights. (ECF No. 1). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this matter to the undersigned for the purposes of making a Report and Recommendation on Plaintiff's three pending motions for contempt alleging that WCDC violated the Preliminary Injunction Judge Brooks issued on November 10, 2022. (ECF Nos. 28, 29, & 57).[2]

---

[1] Plaintiff was a pretrial detainee at the Washington County Detention Center (WCDC) at all times relevant to the claims in the Complaint. (ECF No. 1). Since that time, publicly accessible Arkansas state court records show that he has resolved his state criminal cases. *See State of Arkansas v. Scharnhorst*, 72CR-21-1768 (Ark. Cir. Ct.) (AOC Public CourtConnect). He is currently in the custody of the Arkansas Division of Correction (ADC) and incarcerated at the Barbara Ester Unit, 7500 Corrections Circle, Pine Bluff, AR 71603. *See* Inmate Search, The Arkansas Division of Correction, https://apps.ark.org/inmate_info/search.php (last visited August 11, 2023).

[2] In this action, Plaintiff has filed four motions for contempt, to date. (ECF Nos. 28, 29, 44, & 57). The undersigned previously recommended Plaintiff's third motion for contempt (ECF No. 44), be denied (ECF No. 61), and that recommendation was adopted by Judge Brooks and the motion

1

I.         **PROCEDURAL HISTORY**

After initiating his action, Plaintiff filed a motion for an emergency injunction, seeking the Court to require WCDC staff to provide the daily newspaper to detainees on the days the electronic version is not available on WCDC's "kiosk system." (ECF No. 10). On November 10, 2022, Judge Brooks granted preliminary injunctive relief, ordering the WCDC to "provide a daily newspaper to detainees in electronic format, and if an electronic version is unavailable, to provide another form of access, such as a hard copy." (ECF No. 21) (hereinafter "Preliminary Injunction").

Three weeks later, Plaintiff filed two motions asking that Defendants be found in contempt for failing to comply with the Preliminary Injunction on November 27, 2022, and November 29, 2022, respectively. (ECF Nos. 28 & 29) (hereinafter "Motions for Contempt"). Defendants filed their responses in opposition. (ECF Nos. 38 & 39). Defendants then filed a Notice of Appeal of the Preliminary Injunction to the Eighth Circuit Court of Appeals (ECF No. 30), and a Motion to Stay the Proceedings pending the outcome of that appeal. (ECF No. 34).

United States Magistrate Judge Mark Ford initially recommended granting the Motion to Stay the Proceedings pending the outcome of the appeal, including a stay of Plaintiff's Motions for Contempt. (ECF No. 51). During the 14-day objections period, the parties stipulated to the dismissal of the appeal. (ECF No. 54). Judge Brooks subsequently denied the Defendants' Motion to Stay as moot, and this matter was reassigned to the undersigned. (ECF Nos. 55; Text Memo of Reassignment, March 1, 2023).

Two weeks later, on March 24, 2023, Plaintiff filed another motion for contempt, alleging that Defendants violated the Preliminary Injunction on March 14-15, 2023. (ECF No. 57).

---

dismissed on April 19, 2023. (ECF No. 67).

Defendants filed their response in opposition on April 7, 2023. (ECF No. 65).

Upon review of all the contempt-related submissions, the Court observed that while Defendants had provided argument in opposition to the Plaintiff's Motions for Contempt, they presented no evidence for the Court's consideration. On April 19, 2023, therefore, the Court ordered Defendants to show cause why they should not be found in contempt for violating the Preliminary Injunction on November 27, 2022, November 29, 2022, and March 14-15, 2023, granting Defendants twenty-one (21) additional days to submit evidence. (ECF No. 68). Defendants filed a more robust response, including twenty-eight (28) exhibits and twenty (20) affidavits, on May 9, 2023. (ECF No. 69).

In response to this filing, Plaintiff filed a motion on May 19, 2023, requesting a 90-day extension to reply, claiming he required the additional time because he had been transferred to multiple facilities, had not had an adequate opportunity to review his legal paperwork, and was optimistic that he would be released on parole in July. (ECF No. 74). The undersigned concluded that while Plaintiff's request for an extension was warranted, his representation that he hoped to be released on parole in July was simply too speculative to justify granting a 90-day extension. (ECF No. 74). Instead, the Court extended the deadline by 45 days, and ordered Plaintiff to file his reply by July 10, 2023. *Id.*

On June 26, 2023, Plaintiff alerted the Court that he had been unable to view Defendants' video exhibit. (ECF No. 76). In response, the Court ordered the Arkansas Division of Correction (ADC) to arrange for Plaintiff to view the video exhibit and ordered Plaintiff to submit his reply to Defendants' response by no later than July 24, 2023; the Court also warned that no further extensions would be granted absent extraordinary circumstances. (ECF No. 77).

On July 24, 2023, Plaintiff advised that he had finished composing his reply, but had not yet been allowed to go to the prison law library to make copies of the reply to file with the Court and send to opposing counsel. (ECF No. 79). The Court then scheduled a video conference hearing and directed a representative from the Barbara Ester Unit to appear at the hearing along with the parties. (ECF Nos. 80 & 81). During the hearing on July 26, 2023, the Court learned that Plaintiff had submitted his paperwork, which included affidavits from former inmates at the Benton County Detention Center (BCDC), to be copied pursuant to ADC policy, but this paperwork was subsequently lost due to the oversight or negligence of ADC officials. Everyone agreed that Plaintiff was not at fault. (ECF No. 82). Concluding that these circumstances constituted good cause to extend Plaintiff's deadline to August 7, 2023, the Court solicited the ADC to aid Plaintiff in expediting the reproduction and filing of his pleading. Having now received Plaintiff's reply (ECF No. 85), and having reviewed the entirety of the parties' submissions, the Contempt Motions are ripe for submission.[3]

## II. DISCUSSION

"One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (citing *United States v. United Mine Workers*, 330 U.S. 258, 290 n.56 (1947)).

"A party seeking civil contempt bears the initial burden of proving, by clear and convincing

---

[3] After the Court received Plaintiff's reply, it received a notice from Plaintiff updating the Court on the status of his efforts to file the reply. (ECF No. 86). Because Plaintiff's reply had been filed by this point and that reply includes all materials referenced at the hearing, the Court assumes that information in the notice was no longer current when it was filed. *Id.*

evidence, that the alleged contemnors violated a court order." *Chi. Truck Drivers*, 207 F.3d at 505 (citing *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998)). If the moving party meets that initial burden, the burden then shifts to alleged non-moving party to show inability to comply. *Id.* To establish an inability to comply, the alleged contemnors must establish: "(1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not 'self-induced;' and (3) that they made in good faith all reasonable efforts to comply." *Id.* at 506 (internal citations omitted).

## Preliminary Injunction

"A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order." *Chaganti & Assocs., P.C. v. Nowotny,* 470 F.3d 1215, 1223 (8th Cir. 2006) (quoting *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.,* 293 F.3d 409, 418 (8th Cir. 2002)). Thus, before turning Plaintiff's Motions for Contempt, this Court first addresses the basis for the Preliminary Injunction and what it requires.

Plaintiff's motion for injunctive relief requested an order requiring the Defendants to provide the newspaper "on the (many) days that it is not available due to the failure by the Defendants to upload it to the kiosk and the (many) days that the kiosk is out of service." (ECF No. 10 at p. 2). In seeking this relief, Plaintiff described that on some days, the WCDC provided "the newspaper in electronic format through the kiosk" but on other days, "no electronic paper is provided," meaning that Plaintiff and other detainees "have no access to the daily newspaper." (ECF No. 21, pp. 2-3). It is undisputed that, when provided, the daily newspaper was being provided electronically on WCDC's kiosk/tablet system; Plaintiff's complaint was that the newspaper was often not uploaded and/or the kiosk was often out-of-service and thus, the

5

newspaper unavailable. (ECF No. 21, p. 1)

In considering Plaintiff's request, Judge Brooks explained that Plaintiff "is not complaining that he would much rather receive the daily newspaper in hard copy; he is complaining that on 'many' days, without justification or explanation, the WCDC fails to provide him *any* daily newspaper in *any* format." (ECF No. 21, p.3). After a detailed analysis, Judge Brooks then concluded that all four *Dataphase* factors weighed in favor of granting Plaintiff's request for injunctive relief, finding, namely, that Plaintiff had demonstrated a likelihood of success on the merits of his claim that Defendants violated his constitutional rights "through their policy of banning access to newspapers on the days the electronic kiosk is unavailable," that the Defendants had "failed to explain why providing a paper copy of the newspaper only on the days the electronic version is unavailable would jeopardize the safety and operation of the facility," and that "granting a preliminary injunction will not unduly burden the WCDC because the injunction will order the facility to do what it already claims it is doing (namely, providing inmates with daily access to the newspaper on the kiosk) or to provide a reasonable alternative in the form of a paper copy of the newspaper on the days the electronic copy is unavailable." *Id.* at pp. 3-4. Judge Brooks then issued the following preliminary injunction:

> The Washington County Detention Center is ORDERED to provide a daily newspaper to inmates in electronic format, and if an electronic version is unavailable, to provide another form of access, such as a hard copy.
>
> *Id.* at p. 5.

By its terms, then, the Preliminary Injunction requires two things: (1) that the WCDC provide a daily newspaper to inmates in electronic format; and (2) if that electronic version is unavailable, to provide some other form of access to the newspaper. *Id.* The Court now turns to Plaintiff's claims that the Defendants violated this Preliminary Injunction on November 27, 2022, November

6

29, 2022, and March 14-15, 2023. (ECF Nos. 28, 29 & 57).

### November 27, 2022

Plaintiff alleges Defendants violated the Preliminary Injunction on November 27, 2022, by failing to provide the daily newspaper in any format. (ECF No. 28). Defendants concede that the November 27, 2022, newspaper was not available in any format on November 27, 2022, and that it was not available until the following day – November 28, 2022 – when a digital version of the November 27, 2022, newspaper was successfully uploaded onto WCDC's kiosk/tablet system. (Response at ¶ 7, ECF No. 69). Accordingly, the parties agree that no newspaper—in any format—was available to any WCDC inmate on November 27, 2022. This Court therefore finds that Plaintiff has met his burden to show by clear and convincing evidence that Defendants violated the Preliminary Injunction on November 27, 2022. *Chi. Truck Drivers*, 207 F.3d at 505 (explaining that the initial burden is on the party seeking contempt to show a violation of the order).

The burden now shifts to Defendants to show that this violation of the Preliminary Injunction was due to an inability of WCDC to comply. As noted above, to satisfy this burden, Defendants must establish (1) that they were unable to comply with the Preliminary Injunction, explaining why categorically and in detail; (2) that their inability to comply was not 'self-induced;' and (3) that they made in good faith all reasonable efforts to comply." *Id.* at 506 (internal citations omitted).

In determining whether the Defendants have met their burden, the Court considers the following evidence: Early in the morning of Sunday, November 27, 2022, and shortly after starting his shift at 6:00 AM, Sgt. Malone encountered technical difficulties when trying to upload the PDF-version of the daily newspaper onto the kiosk. (Ex. D, Malone Aff. at ¶¶ 8-12, ECF No. 69-

4). After his first attempt to upload the newspaper failed, Sgt. Malone – who says he has successfully uploaded the newspaper onto the kiosk in the past and was familiar with how to do it – tried again. *Id.* at ¶ 9. When his second attempt failed, Sgt. Malone telephoned his supervisor, Lt. Mike Arnold, who was off duty; Lt. Arnold instructed Sgt. Malone to try uploading the newspaper again. *Id.* at ¶ 11.

Lt. Amanda Arnold is Lt. Mike Arnold's spouse. (Ex. E, M. Arnold Aff. at ¶ 4, ECF No. 69-5). When Sgt. Malone called Lt. Mike Arnold, Lt. Mike Arnold put the call on speaker phone and his wife, Lt. Amanda Arnold says she heard Sgt. Malone explain the problems he was experiencing with uploading the newspaper, including his reference to an error code. (Ex. F, A. Arnold Aff. at ¶ 4, ECF No. 69-6). In an effort to help, Lt. Amanda Arnold, who was not assigned to WCDC at the time, used her cell phone to send "an email to Tech Friends (sometimes referred to as CommTech) . . . and included the error code in the email." *Id.* at ¶ 7. Comm Tech is the IT support group for WCDC's kiosk system. *Id.* Lt. Arnold says that when she was assigned to work at the WCDC, she had used this procedure to request technical assistance from Tech Friends. *Id.* A copy of this email could not be located for review. *Id.* at ¶ 8.

Following this phone call with Lt. Arnold, Sgt. Malone says he was under the impression that technical support had been alerted to the problem. (Ex. D, Malone Aff. at ¶13, ECF No. 69-4). Sgt. Malone claims that he then continued on with his duties because he did not believe he could further assist with uploading the newspaper until the technical problem was resolved. *Id.* at ¶ 13.

The Court first examines whether this evidence satisfies Defendants' burden to show an inability on November 27, 2022, to comply with the first obligation of the Preliminary Injunction:

to "provide a daily newspaper to inmates in electronic format . . . ." (ECF No. 21). The Court finds that they have met this burden.

Defendants have produced sufficient evidence showing that an electronic version of the November 27, 2022, newspaper was not available on that day because Sgt. Malone encountered technical problems when trying to upload it onto the kiosk.[4] Sgt. Malone has testified that he made multiple good faith attempts to upload the digital newspaper and then contacted his supervisor, Lt. Mike Arnold, who encouraged him to keep trying. There is some evidence that Lt. Amanda Arnold emailed CommTech, seeking assistance on behalf of Sgt. Malone. There is also a suggestion that this particular newspaper "was a significantly larger digital file than a normal newspaper," which may have contributed to the technical difficulties. But the Court does not find the size of the newspaper necessarily compelling considering that Captain Ake was able to upload the 237-page newspaper when notified of the problem the following Monday afternoon without incident. (Ex. C., N. Ake Aff. at ¶¶ 12-13, ECF No. 69-3). While there is no evidence that Sgt. Malone or Lt. Mike Arnold or Lt. Amanda Arnold followed up with each other or with anyone else at WCDC, or that CommTech responded or provided any assistance on November 27, 2022, the Court finds that the Defendants have met their burden in establishing that they were unable to comply with the Preliminary Injunction requiring the WCDC to provide an electronic version of the daily newspaper due to technical problems outside of their control. There is no evidence challenging

---

[4] The Court recognizes that Plaintiff claims that Sgt. Malone's explanation that he encountered technical problems when uploading the newspaper on November 27, 2022, is a "fabrication." (ECF No. 85). But Plaintiff's argument is not evidence, and Plaintiff has produced no evidence that directly contradicts Sgt. Malone's affidavit. *See id.* Accordingly, the Court views the evidence that the WCDC encountered technical problems when uploading the November 27, 2022, newspaper as unchallenged.

9

Sgt. Malone's claim that technical problems interfered with his ability to upload the newspaper. Further, there is no evidence that these technical problems were self-induced. Finally, there is no evidence disputing that Sgt. Malone made good faith and reasonable efforts to upload the newspaper and then reached out to his superior for advice when those efforts failed. Defendants, therefore, have shown an inability to comply with the directive to provide an electronic copy of the daily newspaper to inmates on November 27, 2022. Indeed, the situation is reminiscent of the status quo Plaintiff described in his Complaint.

This finding, however, does not end the analysis. The second (and more apt) question is whether Defendants can satisfy their burden to establish WCDC's inability to comply with the second part of the Preliminary Injunction, requiring the WCDC to "provide another form of access, such as a hard copy" when an electronic version of the newspaper is not available. (ECF No. 21, p. 5).

To answer this question, the Court returns to the evidence submitted. Sgt. Malone asserts in his affidavit that because he could not upload the newspaper, he did not believe he could print out a hardcopy of the newspaper. *Id.* at ¶ 14. Further, Sgt. Malone says that even if he could have printed the newspaper on the day in question, he did not have sufficient staff or paper to print copies of the 237-page Sunday newspaper for all 800 detainees. *Id.* at ¶¶ 15-17. According to Sgt. Malone, he did not leave the WCDC to purchase copies of the newspaper because "he had other duties necessary to protect the security of the facility," requiring him to remain at his "post." *Id.* at ¶¶ 16-17. Sgt. Malone adds that had he left, he would have had to "go to dozens of convenience stores to buy sufficient copies of the daily newspaper to distribute to the detainees." *Id*. Sgt. Malone further notes that, because November 27, 2022, was a Sunday, he would have had to use

10

personal funds and request reimbursement, but he did not have funds to cover the cost of 800 newspapers. *Id.* at ¶ 18. According to Sgt. Malone, no one else was available to drive around to these many convenience stores to use their own funds to purchase 800 newspapers, either. *Id.* at ¶ 17. Sgt. Malone claims he "did everything within [his] power to provide detainees with access to the newspaper on November 27, 2022." *Id.* at ¶ ¶ 17, 20.

Captain Ake advances the same concern as Sgt. Malone, his subordinate: that the WCDC cannot afford to print 800 copies of the newspaper or go out into the community and "gather up 800 copies of the paper for distribution for a single day." (Ex. C, Aff. N. Ake, at ¶ 6, ECF No. 69-3). According to Captain Ake, if staff had been able to print the newspaper that day, it would have required approximately "189,600" sheets of paper to distribute a physical copy of the newspaper to each inmate. *Id.* at ¶ 15. Captain Ake claims there was neither sufficient staff nor paper to undertake such a task on November 27, 2022. *Id.* Both Captain Ake and Sgt. Malone go on to explain why providing personal, printed copies of the entire Sunday newspaper to each of the WCDC's 800 detainees would be burdensome in terms of manpower and the limited resources (including an insufficient paper supply) provided by the Quorum Court. *Id.* at ¶ 6; *see also* (Ex. D, Aff. Malone at ¶ 15, ECF No. 69-4).

The architect of the "800 copies" defense is unknown. Nevertheless, its genesis cannot reasonably be found in the language of the Preliminary Injunction. Unequivocally, the Preliminary Injunction does not require WCDC to provide each detainee with his own personal copy of the newspaper when the electronic version is unavailable on the kiosk/tablets. Any such reading is unreasonable. The undersigned generously describes this interpretation as absurd.

The Defendants' false equivalency argument is as concerning as Sheriff Cantrell's

testimony that "the local paper is only printed on Sundays" [5] and "digital access was the only access that could be provided within the funds and resources available to the Sheriff's Office…," and Captain Ake's testimony, who serves as the Detention Center Captain, that he "could not develop a way to provide a hard copy of the paper to detainees in the Detention Center." (Ex. A., Aff. Sheriff Jay Cantrell, at ¶¶ 1, 13, ECF No. 69-1; Ex. C, Aff. N. Ake, at ¶ 6, ECF No. 69-3). Major Denzer chimes in that excess paper (presumably these 189,600 necessary copies) is both a security and sanitation problem, explaining the penal problems paper causes with some particularity.[6] (Ex. B., Aff. Major Randall Denzer, at ¶¶ 4-7, ECF No. 69-2).

Despite no evidence that Defendants formulated any plan whatsoever to comply with the Preliminary Injunction when the electronic newspaper is unavailable to detainees, Defendants argue with temerity they should not be found in contempt because (a) WCDC cannot afford to print 800 copies of the newspaper, or alternatively, WCDC employees cannot leave their posts to run around Northwest Arkansas convenience stores buying up 800 copies of the newspaper with their own money; (b) even if WCDC could afford to print or purchase 800 copies, these thousands of pages would create unsafe conditions in the facility; and (c) WCDC did not intend to violate the Preliminary Injunction. Defendants also seem to imply that Plaintiff's constitutional rights must be re-weighed against Defendants' judgment and discretion in executing the inordinately difficult

---

[5] The undersigned is preparing this Report and Recommendation on Thursday, August 10, 2023, and takes notice of the fact that paper copies of today's daily edition of the ARKANSAS DEMOCRAT-GAZETTE are available for sale to the public at the Walmart Neighborhood Market, 660 M.L.K. Blvd, in Fayetteville, Arkansas, which is .9 miles from the Washington County Detention Center. *See* Fed. R. Evid. 201(b) (explaining circumstances under which the court may take judicial notice of a fact)

[6] The Preliminary Injunction includes a finding that WCDC had failed to explain why providing a paper copy of the newspaper would jeopardize the safety and operation of the facility. (ECF No. 21, p. 4).

12

task of operating the detention center.[7] *See Smith v Delo*, 995 F.2d 827, 829 (8th Cir. 1993), *cert. denied*, 510 U.S. 1052 (1994) (quoting *Quinn v. Nix*, 983 F.2d 115, 118 (8th Cir. 1993)). Because Defendants tried their best to download the voluminous newspaper, and because it was eventually downloaded and electronically available by 2:00 pm on Monday, Defendants say the denial was "short-lived" and this Court should conclude no harm, no foul. (ECF No. 38, p. 2).

Unfortunately, despite being given two opportunities to fend off Plaintiff's contempt motion related to November 27, 2022, Defendants include not a single legal citation in their several responses, and filed no brief providing any legal authority for this Court to excuse their contempt. Furthermore, Defendants' evidence is flimsy, and their argument misses the point. The Preliminary Injunction specifically directed the WCDC to provide "another form of access, such as a hard copy" of the newspaper to detainees when it is not available on the kiosk/tablet system. Had any of the Defendants credibly believed the Preliminary Injunction was, in these instances, requiring the WCDC to provide 780-800 detainees with their own personal paper copy of the daily newspaper and they knew (as they say now) that such a directive was "fiscally and physically" impossible, Defendants have able legal counsel who immediately could have sought clarity from the district court. The record is clear – Defendants sought no clarification of the Preliminary Injunction. The undersigned questions the sincerity of the "800 copies" defense.

By design, the Preliminary Injunction predicted these precise present circumstances—

---

[7] The undersigned reads the Preliminary Injunction as having already performed this task, finding that "providing a paper version of the newspaper on the days the kiosk is down does not undermine any legitimate penological interest … [and] Defendants do not dispute this contention in their briefing." (ECF No. 21, p. 3 (cleaned up)). The Court does not—and will not—revisit the basis for the Preliminary Injunction. This Court's analysis is limited to a recommendation on whether the Defendants violated that Preliminary Injunction, and, if so, whether they should be found in contempt.

WCDC's inability to upload the daily newspaper—and required the WCDC to implement a plan B to ensure that inmates would nevertheless have access to the newspaper. Despite this Order, Defendants developed no plan, no process, or best practices (or even same day recommendations) for Sgt. Malone or others to implement when the daily newspaper could not be uploaded. Viewed deferentially, Defendants even neglected to implement the easiest, cheapest, and most obvious common-sense approach: empowering one or more trusted WCDC employees to purchase a few paper copies of the newspaper at a *de minimis* expense to WCDC to be placed in the day rooms or common areas of the pods when the daily newspaper failed to download, or the kiosk system was unavailable. *See e.g.,* (ECF No. 21) (citing *Koger v. Dart*, 114 F.Supp. 3d 572 (N.D. Ill. 2015) (explaining that "permitting newspapers in libraries and day rooms, but not individual cells—would accommodate [inmates' First Amendment rights] while completely addressing the jail's [security] concerns"). In light of Major Denzer's testimony that Plaintiff is the only detainee to ever complain about accessing the newspaper on the day it is published,[8] another readily apparent and economical solution would have been to purchase a copy of the daily newspaper, give it directly to Plaintiff to read, and then pass it through the detention center to other interested detainees. Defendants instead attempt to excuse their inaction, testifying "there was no other way" than the kiosk/tablets to provide detainees with the daily newspaper. Defendants clutch to the status quo existing at the time of Plaintiff's Complaint, maintaining (it appears) that detainees should simply understand that when the WCDC is unable to upload the digital newspaper, there will be no newspaper that day (or perhaps, that day's newspaper will appear on the kiosk the next day, or some other day). The Courts takes this opportunity to remind the Defendants that the

---

[8] (Ex. B, Aff. R. Denzer at ¶ 14, ECF No. 69-2).

Preliminary Injunction was based, in part, on Judge Brooks's finding that the WCDC's status quo approach to detainees' First Amendment right to read the news is likely constitutionally deficient. (ECF No. 21).

With respect to paper copies, the undersigned notes that Plaintiff has submitted several unchallenged affidavits attesting that the Benton County Detention Center provides some number of paper copies of the newspaper to detainees on a daily basis. (ECF No. 85). Benton County's policy is not particularly germane to the undersigned's analysis; nevertheless, if true and correct, Benton County's practice may suggest Defendants either misapprehend the availability of daily newspapers or exaggerate WCDC's institutional security concerns, or both.

Defendants each strike a similar chord in their affidavits – none of them "intended" to violate the Preliminary Injunction. But the absence of willfulness is not a defense as "willfulness is not required for a finding of civil contempt[.]" *United States v. Laurins*, 857 F.2d 529, 534 (9th Cir.1988); *see also Cedar Rapids Lodge & Suites, LLC, v. JFS Dev., Inc.*, Case No. 09-CV-175-LRR, 2011 WL 4625661 *3 (N.D. Iowa Oct. 3, 2011) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Philippe v. Window Glass Cutters League of Am.,* 99 F. Supp. 369, 375 (W.D. Ark. 1951) ("It might be observed that 'the absence of willfulness does not relieve from civil contempt.'") (citing *Jacksonville Paper Co.*, 336 U.S. at 191).

Defendants' evidence does not satisfy its burden to establish WCDC's inability to provide detainees with another form of access to the newspaper. There is no evidence that WCDC implemented any process or best practices regarding compliance with the Preliminary Injunction when the electronic version of the newspaper is unavailable (as it was on November 27, 2022). The evidence from WCDC's leadership is that "providing another form of access" to the

newspaper was simply not possible and perhaps dangerous. (Ex. A., Aff. Sheriff Jay Cantrell, at ¶ ¶ 1, 13, ECF No. 69-1; Ex. C, Aff. N. Ake, at ¶ 6, ECF No. 69-3; Ex. B., Aff. Major Randall Denzer, at ¶¶ 4-7, ECF No. 69-2). WCDC's failure to implement *any* process to comply with the Preliminary Injunction on these occasions was "self-induced." Their failure to act and instead rely on the indefensible "800 copies" defense was self-induced.

There is similarly no evidence that WCDC made any good faith or reasonable efforts to provide another form of access to the newspaper on November 27th once Sgt. Malone determined the electronic version was unavailable. Sgt. Malone succinctly described his efforts: Once the download failed, Lt. Mike Arnold was informed, and Lt Amanda Arnold sent a tech email; Sgt. Malone thereafter "continued with [his] other duties." (Ex. D, Malone Aff. at ¶ 12, ECF No. 69-4). Lt. Mike Arnold testified he "did not know what else to tell [Sgt. Malone] to do," "felt that getting the help of computer professional was the best thing to do," "did not inform [his] supervisors," and was not "involved further." (Ex. E, M. Arnold Aff. at ¶¶ 6-9, ECF No. 69-5). No other proffered Affidavit describes any efforts on the part of anyone to provide the newspaper to detainees on November 27. Viewed in the light most favorable to WCDC, there were no efforts – and thus, no good faith efforts – to provide another form of access to the daily newspaper on the date in question. That the Sunday newspaper was eventually made available Monday afternoon does not amount to a cognizable civil contempt defense under these circumstances.

Accordingly, the undersigned recommends that Plaintiff's Motion for Contempt (ECF No. 28) alleging WCDC's civil contempt as a result of its failure to provide the daily newspaper to detainees on November 27, 2022, should be **GRANTED.** Should this recommendation be adopted, the appropriate remedy shall be fashioned by the district court.

**November 29, 2022**

Turning to the next of Plaintiff's contempt motions, it is alleged Defendants violated the Preliminary Injunction on November 29, 2022, when Plaintiff could not view the daily newspaper on the kiosk because it was not functioning. (ECF No. 29).

In response, Sgt. Malone testifies that "[o]n November 29, 2022, [he] uploaded the daily newspaper at the beginning of [his] shift without a problem. The upload was completed at 6:19:29 AM." (Ex. D, Aff. Malone at ¶ 22, ECF No. 69-4). Daniel Giertz, an employee of Summit Food Service who is "specifically assigned to manage and coordinate the maintenance" of electronic kiosks at the WCDC, says he was notified on November 29, 2022, that there was a problem with the kiosk in the A-1 housing unit. (Ex. H, Aff. Giertz at ¶¶ 1-2, ECF No. 69-8). According to Giertz, the kiosk in the A-1 housing unit "was successfully updated and working correctly at approximately 1:00 pm the same day, November 29, 2022." *Id.* at ¶ 7. The evidence is that the newspaper was available to detainees at that time.

In reply, Plaintiff says Defendants violated the Preliminary Injunction because the kiosk was malfunctioning during his "hour out" of his cell so *he* was not able to access the newspaper on November 29, 2022. (ECF No. 85). According to Plaintiff, he requested a hard copy of the newspaper and another opportunity to access the newspaper on the kiosk. *Id.* Plaintiff claims Sgt. Morgan told him (and another detainee) that they would be allowed another opportunity to access the kiosk, time permitting. *Id.* Sgt. Morgan says does not recall any such conversation with Plaintiff. (Ex. J., Aff. Morgan at ¶¶ 6-8, ECF No. 69-10).

While the Preliminary Injunction requires WCDC to "provide a daily newspaper to detainees in electronic format, and if an electronic version is unavailable, to provide another form

of access, such as a hard copy," it does not require WCDC to ensure that Plaintiff or any other particular detainee be specifically granted access to the kiosk every or any specific day or any specific time. Plaintiff essentially concedes this point. (ECF No. 85).

While Plaintiff is understandably frustrated that the kiosk was not operational during his "hour out" of his cell on November 29, 2022, and upset that he was subsequently denied additional time to access the kiosk once it was repaired, Plaintiff's specific lack of access during a certain hour does not equate to WCDC's violation of the Preliminary Injunction. This is particularly true in this instance – there is no allegation or evidence that the newspaper was unavailable to the WCDC detainees on November 29, 2022, once the kiosk in A-1 was repaired.[9] There is no evidence that any other kiosk was inoperable the entire day of November 29. Accordingly, Plaintiff has failed to meet his burden that the Defendants violated the Preliminary Injunction on November 29, 2022, and the undersigned recommends Plaintiff's Motion for Contempt (ECF No. 29) be **DENIED.**

### *March 14-15, 2023*

Plaintiff contends Defendants violated the Preliminary Injunction from 5:00 PM on March 14, 2023, until 10 AM on March 15, 2023, because Plaintiff "was given no access to the kiosk, the electronic newspaper, or any hard copy" during this time. (ECF No. 57).

---

[9] Had the WCDC provided Plaintiff's "pod" with a limited number of newspapers upon learning that the kiosk in that pod was not functioning, and if those newspapers were being used by other inmates during Plaintiff's "hour out," WCDC similarly would not be in violation of the Preliminary Injunction simply because Plaintiff did not have individual access to the newspaper. The Court sees no substantive difference between that hypothetical scenario and the facts here. Although the kiosk was not functioning when Plaintiff had his hour out, the kiosk was fixed later in the day and available for other inmates in the pod to access, albeit not the Plaintiff. Nothing in the Preliminary Injunction, however, requires the WCDC to ensure that Plaintiff receives the daily newspaper.

With respect to March 14-15, 2023, the evidence is that Plaintiff was transferred to the WCDC from a different facility at approximately 1700 hours (or 5:00 PM) on March 14, 2022. (Ex. C, Aff. Ake at ¶ 20, ECF No. 69-3). Plaintiff was not "booked" into the WCDC until the morning of March 15, 2022. *Id.* It is the practice of WCDC that a detainee is not provided access to the kiosk/tablets until the booking process is completed. *Id.* at ¶ 21.

On March 14, 2023, Lt. Brian Atchley successfully uploaded the newspaper onto the kiosk system. (Ex. C, Aff. Ake at ¶ 19, ECF No. 69-3). On March 15, 2023, Lt. Atchley again uploaded the newspaper onto the kiosk system, and it was available to detainees by 6:24:43 AM. *Id.* at ¶ 23. Plaintiff completed booking, was entered into the system, and moved to his housing unit at approximately 1000 hours. *Id.* at ¶ 24. While Plaintiff – who specifically requested to be housed alone – was waiting for his cell to be cleaned on March 15, 2023, Plaintiff had the opportunity to access the kiosk system but did not take advantage of that opportunity, instead standing in the day room area of the pod, speaking with other detainees. *Id.*

In his reply, Plaintiff continues to argue WCDC violated the Preliminary Injunction on March 15, 2023, by not providing him with a copy of the daily newspaper. (ECF No. 85). Plaintiff says that while he was in booking, he was told he would be given the opportunity to access the newspaper during his "hour out;" however, Plaintiff was then denied his "hour out" because "Cell 14 [already] had its hour out" before Plaintiff was housed in that cell. *Id.* While troubling and somewhat illogical that Plaintiff might be denied an hour outside his cell because the previous cell occupant already received an hour out, Plaintiff's argument that WCDC violated the Preliminary Injunction still fails. Although Plaintiff missed an opportunity to read the newspaper on either day due to housing circumstances related to his WCDC reentry, it is undisputed that the newspaper

19

was provided and available to detainees on the kiosk on both dates in question, and there is no evidence that WCDC detainees were unable to access the newspaper on either day.[10] Plaintiff fails to establish that WCDC violated the Preliminary Injunction on either March 14 or 15, 2023, and the undersigned recommends that Plaintiff's Motion for Contempt (ECF No. 57) be **DENIED.**

### III.  CONCLUSION

For these reasons, the undersigned recommends that Plaintiff's Motion for Contempt (ECF No. 28) alleging WCDC's failure to provide the daily newspaper to detainees on November 27, 2022, should be **GRANTED;** that Plaintiff's Motion for Contempt (ECF No. 29) alleging his inability to access the newspaper on November 29, 2022, be **DENIED**; and that Plaintiff's Motion for Contempt (ECF No. 57) alleging his inability to access the newspaper on March 14 and March 15, 2023, likewise be **DENIED.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of August 2023.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

---

[10] The Court recognizes that Plaintiff disputes that he would have been provided an opportunity to access the kiosk on March 15, 2023, when he was waiting for his cell to be cleaned. (ECF No. 85). The Court, however, need not address the credibility of the claim that he would have been offered such an opportunity, because the Court finds – for the reasons outlined above – that Plaintiff did not meet his burden in showing that Defendants violated the Preliminary Injunction on March 15, 2023.