IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                                        PLAINTIFF

V.                                        CASE NO. 5:22-CV-5138

MAJOR RANDALL DENZER; LT. KEVIN EAST;
LT. NOLAN AKE; LT. AMANDA ARNOLD; and
SHERIFF JAY CANTRELL                                                                DEFENDANTS

## OPINION AND ORDER

This is a civil rights action filed by *pro se* Plaintiff John William Scharnhorst, III, pursuant to 42 U.S.C. § 1983. On December 12, 2023, the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas, issued a Report and Recommendation ("R&R") (Doc. 103) regarding Defendants' Motion for Summary Judgment (Doc. 89). The R&R recommends dismissing all claims and defendants except for the individual and official capacity claims against Defendants Ake, Denzer, and Cantrell. These three Defendants filed Objections (Doc. 107) to the R&R on February 8, 2024.

Mr. Scharnhorst's claims arise from his pretrial detainment at the Washington County Detention Center ("WCDC") from approximately December 2021 until July 2022. He alleges that: (1) Defendants Ake and East violated his constitutional rights by denying his requests for literature, news, and religious materials; (2) Defendants Denzer, Cantrell, and East refused to modify the WCDC's unconstitutional policy denying inmates meaningful access to literature, news, and religious materials; and (3) Defendants Ake and Arnold violated his constitutional rights by failing to provide access to the local newspaper on a consistent basis or implement a procedure to ensure consistent access.

1

The Court has performed a *de novo* of the record, paying particular attention to those portions of the R&R that drew objection. *See* 28 U.S.C. § 636(b)(1). Defendant Ake contends he is entitled to summary judgment in his official capacity and qualified immunity in his individual capacity with respect to Mr. Scharnhorst's claims requesting access to literature, news, and religious materials at the WCDC. Defendants Denzer and Cantrell similarly maintain they are entitled to summary judgment in their official capacities and qualified immunity in their individual capacities with respect to Mr. Scharnhorst's claims related to the WCDC's policy of prohibiting inmates from ordering their own copies of literature, newspapers, and religious materials.

## I.  OBJECTIONS

### A.  Objection 1: Access to Literature

Defendants object to the R&R's finding that there is a genuine, material dispute of fact about whether inmates like Mr. Scharnhorst have "alternative means" to assert their First Amendment right to access literature, given the WCDC's policy that prohibits inmates from receiving literature from family and friends. (Doc. 103, p. 15). Defendants assert that Mr. Scharnhorst may access literature through electronic tablets made available to inmates for free. These tablets (of unspecified number) may be checked out for fifteen minutes every three hours, for a maximum of one hour per day.[1] Defendants criticize Mr. Scharnhorst for failing to meet his "burden" of showing "how many titles are

---

[1] Defendants do not argue in their objections that the jail's book cart affords a viable "alternative means" for inmates to access literature, including religious texts. They focus only on the tablets. The summary judgment record indicates that is because the book cart has not traveled from pod to pod since sometime in 2020 (the height of the COVID-19 pandemic). Further, there appears to be little dispute that jail staff are generally unfamiliar with the book cart—to the extent it still exists and contains books.

2

available on the tablets, the quantity of such materials, or any information about what titles he sought but was precluded from reviewing allegedly due to such alleged limited titles." (Doc. 107, p. 9). But the number and variety of titles available on the tablets is somewhat beside the point; as the R&R made clear, the real question is not the contents of the tablets but "the *opportunity*" to access them. (Doc. 103, p. 17) (emphasis in original). There is a genuine, material dispute of fact as to whether inmates can meaningfully access *any literature at all*, given the lack of a functioning book cart, the jail's ban on outside donations of books, and strict limitations on inmate access to electronic tablets, i.e., "fifteen minutes on a tablet every three hours, . . . where the tablet must invariably be shared with an unknown number of other detainees." (Doc. 103, p. 18).[2] The first objection is therefore **OVERRULED**.

### B. Objection 2: Access to Religious Materials

Defendants' second objection is to the R&R's finding of a genuine, material dispute of fact surrounding whether the WCDC makes religious materials available to WCDC detainees. The R&R concludes that regardless of whether the WCDC's policy requires clergy to provide religious materials directly to inmates or to WCDC staff to give

---

[2] As for Defendants' argument that inmates like Mr. Scharnhorst could purchase a "Gold Pass" to acquire more time on the tablets, the R&R notes that a "Gold Pass" allows the inmate one uninterrupted one-hour session on the tablet; however:

> There is nothing in the record about the cost of the "Gold Pass," whether there is a limit on the number of "Gold Passes" an inmate is authorized to purchase each day, or whether inmates can purchase a "Gold Pass" to extend an uninterrupted 1-hour session for multiple consecutive 1-hour sessions (in effect allowing certain inmates to "monopolize" tablets).

(Doc. 103, p. 17 n.9). Accordingly, genuine, material disputes of fact exist as to whether the purchase of a "Gold Pass" allows an inmate a viable alternative means of accessing any literature, including religious materials, at the WCDC.

3

to inmates, factual disputes preclude a finding that either policy is reasonable under the *Turner* test. *See Turner v. Safley*, 482 U.S. 78, 90–91 (1987).

The *Turner* test was created by the Supreme Court to help courts determine whether a jail or prison policy infringes on the First Amendment rights of inmates, as well as those seeking to communicate with them. There are four factors to consider:

(1) whether a valid rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it;

(2) whether there are alternative means of exercising the right that remain open;

(3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

(4) whether there are ready alternatives to the policy.

*Id.*

Defendants argue in their objections that if jailers like Defendant Ake failed to pass on religious materials to inmates on occasion, such failures were merely negligent and, thus, not actionable under § 1983. But Defendant Ake insists that when he deprives inmates of religious materials, he is doing so according to WCDC policy. Moreover, there are facts in the summary judgment record to suggest that Mr. Scharnhorst and other detainees at the WCDC cannot obtain access to any religious materials *at all*, per the jail's policy and consistent with the interpretation of the policy by Defendant Ake and others.

For example, Defendant Ake insists that Bibles are available on the book cart, but

4

he also agrees that the book cart has not moved from pod to pod since sometime in 2020. Mr. Scharnhorst asserts that his jailers refuse to deliver hard copies of religious materials that the chaplains provide him, and the Court credits this assertion as true on summary judgment. In response, Defendants provide no proof that he has received the materials or explain why he is not permitted to receive them. It appears that the only approved way for detainees to access religious materials at the WCDC—since hard copies are apparently not an option—is by viewing materials that have been uploaded to kiosks or electronic tablets. Still, the R&R points out that genuine, material disputes of fact remain as to how many tablets there are and whether the WCDC's policies limiting access to these devices mean they are not viable alternatives to hard-copy sources. Defendants' second objection is **OVERRULED**.

### C. Objection 3: Access to News

The R&R concludes the jury should decide whether Mr. Scharnhorst was effectively denied his First Amendment right to access the news while incarcerated at the WCDC—and Defendants disagree, claiming there is no genuine, material dispute of fact about these issues. According to Defendants, even if they were to credit Mr. Scharnhorst's recordkeeping and assume he could not access the daily newspaper on the kiosk or tablets for twenty-seven days over the course of eight months, they believe that sort of deprivation is so negligible that it would not violate the Constitution as a matter of law. Tellingly, they do not point to any law to support that position.

The Court agrees with the R&R that it is for the jury to decide not only how many times Mr. Scharnhorst was denied access to the news but whether that number was merely *de minimis*. Certainly, a missed upload here or there would not be actionable. *See*

5

*Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) ("[A]n isolated incident, without any evidence of improper motive . . . does not give rise to a constitutional violation"); *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) ("[M]erely alleging an isolated delay or some other relatively short-term, non-content-based disruption in the delivery of inmate ready material will not support . . . a cause of action grounded upon the First Amendment."). But Mr. Scharnhorst alleges *serial* deprivations, amounting to nearly a month's worth of lost access to any news, with no particular justification by his jailers. An inmate has a First Amendment right to access the news, as the Seventh Circuit explained succinctly in *Sizemore*, 829 F.2d at 610:

> Allegations of a continuing pattern of disregard for a prisoner's First Amendment right to read and to receive all but the most inflammatory and provocative publications (in addition to publications withheld as punishment after due process) are substantially, and we think constitutionally, different from lawsuits alleging First Amendment violations on the basis of isolated instances of loss or theft of an inmate's reading materials.

The Court's review of the summary judgment record indicates there is no dispute that only *some* housing units at the WCDC have access to television news[3] and that the WCDC bans the introduction of paper copies of the newspaper (or any other periodical news source, as far as the Court can tell). Further, "there is no admissible evidence in the summary judgment record suggesting that WCDC inmates are permitted to obtain the newspaper directly from the publisher or some other source." (Doc. 103, p. 30). That means there is at least a genuine, material dispute of fact as to whether Mr. Scharnhorst's sole source of news was that which his jailers chose to upload on the kiosks or tablets. It is therefore appropriate for the jury to decide how many times the news was not made

---

[3] Mr. Scharnhorst alleges that his unit was not one of them during the relevant time period.

available, the contexts of those deprivations, and whether, individually or cumulatively, such deprivations violated Mr. Scharnhorst's First Amendment rights. The third objection is **OVERRULED**.

### D. Objection 4: Qualified Immunity

The last objection concerns the denial of qualified immunity to Defendants Ake, Denzer, and Cantrell. There are two prongs to the qualified immunity analysis: (1) a violation of a plaintiff's constitutional right by an official acting under color of law and (2) a legal showing that the right was so clearly established at the time that any reasonable official would have known his actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Defendants disagree with the Magistrate Judge that there are genuine, material disputes of fact to indicate they violated Mr. Scharnhorst's First Amendment rights. Aside from the particular fact objections they make, addressed *supra*, they do not address the first prong of the analysis. They focus instead on whether there is any factually analogous caselaw to indicate that Defendants' conduct, if proven true, violated Mr. Scharnhorst's clearly established rights.

A supervisor may be held individually liable under § 1983 "if he directly participated in the constitutional violation, or if his failure to supervise the offending actor caused the deprivation." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (quoting *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994)). Under the "failure to train or supervise" theory, the supervisor is "entitled to qualified immunity unless plaintiff proves that [he] (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Davis v. Buchanan Cnty.*, 11 F.4th 604, 624 (8th Cir. 2021) (quoting *S.M. v. Krigbaum*, 808 F.3d

335, 340 (8th Cir. 2015)).

The R&R explains that during the relevant time frame, Defendant Ake, a WCDC supervisor, was directly involved in overseeing the implementation of WCDC policies related to Mr. Scharnhorst's and other detainees' access to books and literature, religious materials, and the daily newspaper. Indeed, Defendant Ake personally reviewed and, in many cases, responded to Mr. Scharnhorst's grievances about his lack of access to these materials. Defendants Denzer and Cantrell are accused of enforcing the WCDC's policy that effects a *de facto* ban on inmate access to newspapers, magazines, books, and religious materials. Defendants present no facts to counter Mr. Scharnhorst's assertion that they enforced such a policy. *See* Doc. 91. Accordingly, a jury could find that they were directly involved in enforcement.

A reasonable fact finder could conclude that the WCDC's policies amount to a *de facto* ban on books, religious materials, and the daily news—in violation of Mr. Scharnhorst's First Amendment rights—due to the jail's: (1) restrictive policies on outside book donations, (2) lack of access to the (inoperative) book cart, (3) prohibitions on inmate purchases of hard copy or digital books or newspaper subscriptions, (4) prohibitions on staff delivering reading material to inmates (including religious materials provided by clergy), and (5) strict limitations on accessing kiosks and tablets—which contain essentially the only reading material in the facility.

As to whether a reasonable officer would have recognized that the WCDC's policies on inmate access to these reading materials violated the First Amendment, the Court agrees with the R&R that the right was clearly established. "The Supreme Court has twice warned that 'a de facto permanent ban' on inmate access to communications

with outsiders would present a serious constitutional issue." *Human Rights Defense Center v. Baxter Cnty. Ark.*, 999 F.3d 1160, 1165 (8th Cir. 2021) (citing *Beard v. Banks*, 548 U.S. 521, 535 (2006), and *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003)). "[P]ersons who are incarcerated do not forfeit First Amendment protection of their rights to freedom of speech and religion at the prison gate." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).  And the *Turner* factors, which courts use to determine the constitutionality of a jail's policy that restricts inmates' First Amendment rights, have been well known since 1987. 482 U.S. at 89–90. Since genuine, material disputes of fact preclude the Court from concluding, as a matter of law, that the WCDC's relevant policies are reasonable under *Turner*, qualified immunity is unavailable to Defendants Ake, Denzer, and Cantrell. The fourth objection is **OVERRULED**.

## II.  CONCLUSION

**IT IS ORDERED** that Defendants' Objections (Doc. 107) are **OVERRULED** and the R&R (Doc. 103) is **ADOPTED IN ITS ENTIRETY**.  The Motion for Summary Judgment (Doc. 89) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's individual capacity claims against Defendants East and Arnold;

(2) Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's individual capacity claim against Defendant Ake for allegedly failing to consistently provide the local newspaper or to implement a procedure to ensure that the newspaper be provided on a consistent basis and organized fashion despite numerous requests and grievances;

(3) Defendants' Motion for Summary Judgment is **DENIED** with respect to

9

Plaintiff's individual and official capacity claims against Defendant Ake for denying Plaintiff's requests for books and literature, religious materials, and the daily newspaper; and

(4) Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's individual and official capacity claims against Defendants Denzer and Cantrell for enforcing a policy which prevents WCDC inmates from ordering books and literature, religious materials, and the daily newspaper.

Accordingly, Plaintiff's official capacity claims against Defendants East and Arnold are **DISMISSED**, and the Clerk of Court is **DIRECTED** to terminate them as parties to this action.

A final scheduling order will issue setting this matter for a jury trial.

**IT IS SO ORDERED** on this 20th day of March, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE